UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X

MARK CHROSCIELEWSKI,

                              Plaintiff,

                                                    **MEMORANDUM AND ORDER**
            -against-                                16 CV 6640 (RRM) (CLP)

DETECTIVE MILTON CALIX, SHIELD
NO. 2736, DIANA CHROSCIELEWSKI, P.O.
"JOHN DOE," P.O. "JANE DOE,"
SERGEANT "RICHARD ROE" and  THE
CITY OF NEW YORK

                              Defendant(s).
--------------------------------------------------------- X

**POLLAK**, United States Magistrate Judge:

On November 30, 2016, plaintiff Mark Chroscielewski ("plaintiff") commenced this

action, pursuant to 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments, against

defendant Diana Chroscielewski, and against Detective Milton Calix ("Calix" or "defendant

Calix"), P.O. "John Doe," P.O. "Jane Doe," Sergeant "Richard Roe," and the City of New York,

(the "City defendants"), alleging two counts each of false arrest and malicious prosecution.

By Notice of Motion dated September 28, 2017, plaintiff moves to amend his Complaint

to:  1) substitute P.O. Meaghan Fox, Shield No. 29327 for P.O. "Jane Doe," 2) substitute Sergeant

Luis Failla, Shield No. 01400 for Sergeant "Richard Roe," 3) add Detective James Phillips as a

party defendant, and 4) modify the allegations in the original Complaint.

Having considered defendants' objections to the proposed Amended Complaint, the Court

grants plaintiff's motion to amend.

According to the proposed Amended Complaint, defendant Diana Chroscielewski obtained an Order of Protection against her estranged husband, Mark Chroscielewski, on or about April 2, 2015 (the "April Order of Protection"). (Prop. Am. Compl. ¶¶ 15, 21). Plaintiff alleges that the April Order of Protection was to remain in effect until November 30, 2015. (Id. ¶ 22).

On November 13, 2015, plaintiff took his daughter to a movie theater in Queens, arriving at approximately 9:13 p.m. (Id. ¶¶ 23, 24). At approximately 10:30 p.m., an employee escorted plaintiff and his daughter out of the theater to where two New York City Police Officers were waiting. (Id.) The officers indicated that they had received a domestic violence call in which plaintiff's wife accused plaintiff of following her and her daughter to the movie theater in violation of the Order of Protection. (Id. ¶¶ 28-29). According to the officers, in the phone call, Diana Chroscielewski had accused plaintiff of having struck her, kicked her and pushed her onto the floor of the theater. (Id. ¶ 30).

Plaintiff told the officers that the allegations were false and that Diana Chroscielewski had fabricated these allegations because the April Order of Protection was scheduled to expire on November 30, 2015 and because the prosecution underlying the Order of Protection would be dismissed. (Id. ¶¶ 32, 33). After the officers spoke with plaintiff's daughter and with employees of the theater, the officers declined to arrest plaintiff and left. (Id. ¶ 36).

Thereafter, on November 18, 2015, Diana Chroscielewski filed a report about the November 13, 2015 incident at the 111th Precinct, and defendants Calix and Phillips were

---

[1] Unless otherwise noted, the factual background is taken from the allegations in plaintiff's proposed Amended Complaint ("Prop. Am. Compl.").

assigned to investigate the report. (Id. ¶¶ 37, 38). On November 19, 2015, defendant Phillips activated an I-card[2] on plaintiff. (Id. ¶ 39).

The following day, November 20, 2015, Diana Chroscielewski was interviewed by defendant Phillips. (Id.) She informed defendant Phillips that on November 13, 2015, plaintiff had approached her in the theater and pushed past her in a way that caused her "annoyance and alarm." (Id. ¶ 40). She further told Phillips during the interview that she had not reported the incident at the time because she was "'shaken up.'" (Id. ¶ 41). According to the plaintiff, Detective Phillips failed to examine the police records that would have shown that, contrary to her statement, Diana Chroscielewski did in fact report the November 13, 2015 incident and that two officers investigated and made a decision not to arrest plaintiff. (Id. ¶ 42).

Thereafter, on November 20, 2015, defendants Phillips and Calix went to plaintiff's home to arrest him, but he was not there. (Id. ¶ 43). On November 25, 2015, and again on November 29, 2015, defendant Calix and another officer went to plaintiff's home and determined that he was not present on either occasion. (Id. ¶¶ 44, 45).

On November 30, 2015, the April charges that had resulted in the issuance of the April Order of Protection were dismissed and sealed pursuant to New York Criminal Procedure Law § 30.30. (Id. ¶ 49). Following plaintiff's appearance in Queens County Criminal Court that day, two officers, allegedly acting on the direction of defendant Calix, escorted plaintiff out of the building. (Id. ¶¶ 50, 51). The officers then drove plaintiff to the 111th Precinct, where defendant Calix placed him under arrest. (Id.) Plaintiff was charged with criminal contempt in the second degree and harassment in the second degree based on the reported incident at the movie theater. (Id. ¶ 46). Following the arrest, plaintiff was held at the stationhouse of the 111th Precinct and then at

---

[2] An I-card is "an internal NYPD form issued by an officer when there is a suspect, witness, or perpetrator to be investigated." Johnson v. City of New York, No. 15 CV 1625, 2017 WL 1476139 (E.D.N.Y. Apr. 24, 2017) (citations omitted).

Queens Central Booking for 24 hours, and a temporary Order of Protection was granted. (Id. ¶¶ 52, 56). He was released on his own recognizance on December 1, 2015. (Id.) Plaintiff alleges that defendant Calix never interviewed plaintiff's daughter or spoke to the officers who initially appeared at the theater, and that he was falsely arrested. (Id. ¶¶ 47, 48).

On December 14, 2015, plaintiff appeared in Criminal Court to answer the new charges. (Id. ¶ 53). At that time, the charges from the November 30, 2015 arrest were dismissed and plaintiff was given a certificate of disposition. (Id. ¶ 54). The temporary Order of Protection that had been issued as a result of the November 30, 2015 arrest was also vacated. (Id. ¶ 56).

At approximately 6:00 p.m. that same evening, on December 14, 2015, plaintiff returned to the home where he and Diana Chroscielewski both reside at 250-03 87th Drive, Queens, New York. (Id. ¶ 57). Diana Chroscielewski refused to let plaintiff enter the home and instead placed a call to 911. (Id. ¶¶ 58, 59).

Defendant Fox and another officer assigned to the 105th Precinct responded to the outside of the residence where plaintiff was standing. (Id. ¶ 60). According to the Amended Complaint, plaintiff explained the situation and showed them the certificate of disposition and the temporary Order of Protection that had been vacated earlier in the day. (Id. ¶ 61). Defendant Fox and the other officer proceeded to interview Diana Chroscielewski and then returned to inform the plaintiff that the temporary Order of Protection remained in effect. (Id. ¶¶ 63, 64). Plaintiff pointed out the language in the temporary Order of Protection that read that the Order would "'remain in force until and including 5/31/16. If this is a Temporary Order, it shall expire on this date or upon the case's disposition, whichever comes first.'" (Id. ¶ 65). The Order further stated that: "'Arresting officer should confirm that this Order has not been modified or vacated prior to this date.'" (Id.)

According to the plaintiff, the two officers went back inside the premises and, after an hour, returned to tell plaintiff that Diana Chroscielewski had not been informed that the temporary

Order of Protection had been vacated and that she had now made a new complaint against plaintiff for harassment and for violating the Order.  (Id. ¶ 68).  Plaintiff alleges that the officers "coached" Diana Chroscielewski into making this new "false complaint."  (Id. ¶ 70).

The unidentified officer with defendant Fox told plaintiff that he had spoken to Sergeant Failla, who had instructed the officers to place plaintiff under arrest.  (Id. ¶ 71).  The officer further indicated that the police department computer did not reflect that the temporary Order of Protection had been vacated and the charges had been dismissed and that, therefore, plaintiff should have waited several days before returning to his home.  (Id. ¶ 74).  Plaintiff was placed under arrest and transported to the 105th Precinct and released from Queens Central Booking the next morning based on the District Attorney's dismissal of the charge prior to arraignment.  (Id. ¶¶ 76-78).

In moving to amend his initial Complaint, plaintiff seeks to implead defendants Phillips, Fox, and Failla, and to clarify certain of his claims.  In the proposed Amended Complaint, plaintiff brings his First Cause of Action against defendants Calix, Phillips, Fox, Failla and P.O. "John Doe," alleging that he was deprived of his constitutional rights under the Fourth and Fourteenth Amendments when they arrested him and caused him to be prosecuted without probable cause. (Id. ¶¶ 1-81).  His Second and Third Causes of Action allege false arrest and malicious prosecution, respectively, against defendant Calix and the City of New York based on the November 30, 2015 arrest; the Fourth and Fifth Causes of Action against defendant Diana Chroscielewski assert claims of false arrest and malicious prosecution; and the Sixth Cause of Action for false arrest is brought against defendant Failla and the City for the December arrest. (Id. ¶¶ 83-88, 89-95, 96-109, 110-117, 118-124).

The City defendants oppose the amendment on the grounds that plaintiff has failed to state a plausible claim of false arrest for either of the two incidents because there was probable cause on

each occasion. (City Defs.' Mem.[3] at 5-10). Defendant Diana Chroscielewski opposes the motion to amend on grounds of delay and prejudice (Def. Chroscielewski Mem.[4] ¶ 7), even though her attorney apparently executed a Stipulation consenting to the amendment of the Complaint on or before September 29, 2017. (Ramkishun Decl.,[5] Ex. C).[6]

For the reasons set forth below, plaintiff's motion to amend is granted.

DISCUSSION

A. Motion to Amend Standards

Rule 15 of the Federal Rules of Civil Procedure provides that when a party seeks to amend their pleading beyond the time period allowed for an amendment as a matter of course, that party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Thus, absent the opposing party's consent, the Rule requires parties seeking to amend their pleadings to obtain leave of the Court before doing so. Id. Rule 15 expresses a strong presumption in favor of allowing amendment, stating that "[t]he court should freely give leave when justice so requires." Id.

While courts have broad discretion in deciding whether to grant motions to amend, the Second Circuit has cautioned that an amendment should only be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007); accord Burch v. Pioneer Credit

_____

[3] Citations to "City Defs.' Mem." refer to the Memorandum of Law in Opposition to Plaintiff's Motion to Amend the Complaint, filed by the City defendants on October 20, 2017.
[4] Citations to "Def. Chroscielewski Mem." refers to the Affirmation in Opposition & Memorandum of Law of Camille C. Fouche, Esq., dated October 11, 2017.
[5] Citations to "Ramkishun Decl." refer to the Declaration of Susanne Ramkishun, Esq., dated October 27, 2017.
[6] It does not appear as if the City defendants executed the Stipulation, nor was it ever entered by the Court.

Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008). The party opposing amendment bears the burden of demonstrating good reason for denial. Speedfit, LLC v. Woodway USA, Inc., No. 13 CV 1276, 2015 WL 6143697, at *3 (E.D.N.Y. Oct. 19, 2015).

Courts may deny motions to amend where the proposed amendment would be futile as a matter of law; such futility is established where "the proposed amended complaint would fail to state a claim on which relief could be granted." Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc., 889 F. Supp. 2d 453, 459 (S.D.N.Y. 2012) (citing Dougherty v. North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002)). "The court applies the same standard as that for a motion to dismiss under Rule 12(b)(6) when deciding whether to grant leave to amend." Konrad v. Epley, No. 12 CV 4021, 2013 WL 6200009, at *20 (E.D.N.Y. Nov. 25, 2013). As such, a proposed amendment is futile if it does not "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). The proposed amendment must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In making this determination, courts accept all facts alleged by the moving party as true, and construe any ambiguities in favor of the moving party. Konrad v. Epley, 2013 WL 6200009, at *20. Thus, this Court must accept all well-pleaded allegations in the complaint as true and construe the complaint liberally in the light most favorable to the plaintiff. See 5B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1357 (3d ed. 2004). If there is no set of facts that, if proved, would constitute a valid and sufficient claim as amended, the court should deny leave to amend. See Chapman v. YMCA of Greater Buffalo, 161 F.R.D. 21, 23 (W.D.N.Y. 1995).

B. Futility

The City defendants contend that the motion to amend should be denied because the plaintiff has failed to state a plausible claim that would withstand a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6).

1. False Arrest Claims Against Officers Calix, Phillips, Fox, P.O. "John Doe" and Failla

Plaintiff asserts a claim of false arrest in violation of 42 U.S.C. § 1983. Section 1983 prohibits the deprivation of individual rights secured by either the Constitution or the laws of the United States. 42 U.S.C. § 1983. See Spear v. Town of W. Hartford, 954 F.2d 63, 67 (2d Cir.), cert. denied, 506 U.S. 819 (1992); Devany v. County of Nassau, No. 88 CV 0657, 1989 WL 18748, at *3 (E.D.N.Y. Feb. 16, 1989). In order to establish a claim under Section 1983, the plaintiff must allege that the defendants, acting under the color of state law, deprived the plaintiff of a right guaranteed by the Constitution or the laws of the United States. 42 U.S.C. § 1983. See Katz v. Klehammer, 902 F.2d 204, 206 (2d Cir. 1990); Camacho v. City of New York Office of Child Support, No. 05 CV 2002, 2006 WL 2642195, at *1 (S.D.N.Y. Sept. 14, 2006) (quoting Katz v. Klehammer, 902 F.2d at 206). See also Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970); Nesbitt v. County of Nassau, No. 05 CV 5513, 2006 WL 3511377, at *2 (E.D.N.Y. Dec. 6, 2006); Kashelkar v. Rubin & Rothman, 97 F. Supp. 2d 383, 389-90 (S.D.N.Y. 2000), aff'd, 1 F. App'x 7 (2d Cir. 2001), cert. denied, 534 U.S. 896 (2001). "'Acting 'under color' of state law is defined as the 'misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"" Puglisi v. Underhill Park Taxpayer Ass'n, 947 F. Supp. 673, 703 (S.D.N.Y. 1996) (internal citations omitted).

It is well-established that claims of false arrest have been recognized as

deprivations of rights cognizable in a Section 1983 action.  See Albright v. Oliver, 510 U.S. 266, 274 (1994); Singer v. Fulton County Sheriff, 63 F.3d 110, 116-117 (2d Cir. 1995), cert. denied, 517 U.S. 1189 (1996); Houston v. New York City Transit Auth., No. 93 CV 1291, 1996 WL 173128, at *3 (E.D.N.Y. Apr. 10, 1996).  Moreover, an unreasonable "seizure" by a state actor in violation of the Fourth Amendment may be pursued as a claim in a Section 1983 suit.  See Brower v. County of Inyo, 489 U.S. 593, 599 (1989); Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997), cert. denied, 522 U.S. 1115 (1998).  For purposes of evaluating a Section 1983 action based on claims of false arrest and false imprisonment, courts in this Circuit look to the elements of a false arrest claim under state law.  See Singer v. Fulton County Sheriff, 63 F.3d at 118; Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992); Smith v. City of New York, 388 F. Supp. 2d 179, 184 (S.D.N.Y. 2005); Labensky v. County of Nassau, 6 F. Supp. 2d 161, 176 (E.D.N.Y. 1998), aff'd, 173 F.3d 845 (2d Cir. 1999).

### a.  The Elements of a False Arrest/False Imprisonment Claim

False arrest and false imprisonment are synonymous causes of action because the elements of false arrest and false imprisonment claims are identical under New York law.[7]  Murray v. Williams, No. 05 CV 9438, 2007 WL 430419, at *5 (S.D.N.Y. Feb. 8, 2007) (citing Covington v. City of New York, 171 F.3d 117, 125 (2d Cir.), cert. denied, 528 U.S. 946 (1999)).  In order to establish a claim for false arrest under New York State law, plaintiff must prove the following four elements:

> (1)  that defendant intended to confine plaintiff;
> (2)  that plaintiff was conscious of the confinement;

---

[7] "Every false arrest is itself a false imprisonment, with the imprisonment commencing at the time of the arrest."  Blanchfield v. State of New York, 104 Misc. 2d 21, 24, 427 N.Y.S.2d 682, 685 (N.Y. Ct. Cl. 1980).  Thus, the torts of false arrest and false imprisonment are largely synonymous.  See 59 N.Y. Jur. 2d, False Imprisonment § 1 (2008).

(3) that plaintiff did not consent to the confinement; and
(4) that the confinement was not otherwise privileged.

Singer v. Fulton County Sheriff, 63 F.3d at 118 (citing Broughton v. State of New York, 37 N.Y.2d 451, 456, 335 N.E.2d 310, 314, 373 N.Y.S.2d 87, 93, cert. denied, 423 U.S. 929 (1975)); Smith v. City of New York, 388 F. Supp. 2d at 184.

Applying these four criteria to the instant case, this Court finds that there is no dispute as to the first three elements of the claim. The defendant officers arrested plaintiff with the intent to confine him; plaintiff was clearly conscious of the fact of his arrest; and plaintiff protested and did not consent to the arrest.

As for the fourth element, courts have held that although "an arrest without a warrant is presumed unlawful," the defendant can establish a legal justification for the arrest, and thus defeat a constitutional claim for false arrest, by demonstrating that there was probable cause for the arrest. Little v. Massari, 526 F. Supp. 2d 371, 374-75 (E.D.N.Y. 2007); see also Pierson v. Ray, 386 U.S. 547, 557 (1967) (holding that in a Section 1983 action, where there is probable cause for a challenged arrest, a law enforcement officer cannot be found to have violated the arrestee's rights), rev'd in part on other grounds, Harlow v. Fitzgerald, 457 U.S. 800 (1982); Zanghi v. Incorporated Vill. of Old Brookville, 752 F.2d 42, 45 (2d Cir. 1985) (holding that "[i]t is abundantly clear that a finding of probable cause will defeat state tort claims of false arrest, false imprisonment and malicious prosecution"); cf. Broughton v. State of New York, 37 N.Y.2d at 458, 335 N.E.2d at 315, 373 N.Y.S.2d at 94 (holding that "[w]henever there has been an arrest and imprisonment without a warrant, the officer has acted extrajudicially and the presumption arises that such an arrest and imprisonment are unlawful"). Indeed, "'probable cause serves as a complete defense to the charges of false arrest and malicious prosecution.'" Matthews v. City of New York, No. 02 CV 715, 2006 WL 842392, at *5 (E.D.N.Y. Mar. 27, 2006) (quoting Graebe v. Falcetta, 726 F.

Supp. 36, 38 (E.D.N.Y. 1989), aff'd, 946 F.2d 883 (2d Cir. 1991)); Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004).

Thus, where, as here, the arrest was effected without a specific warrant, the focus of the court's analysis in determining whether a plaintiff has satisfied this fourth element in a claim for false arrest is on whether the arrest was based on probable cause. See Little v. Massari, 526 F. Supp. 2d at 374-75; Houston v. New York City Transit Auth., 1996 WL 173128, at *4; Niemann v. Whalen, 911 F. Supp. 656, 666 (S.D.N.Y. 1996); Augustine v. Reid, 882 F. Supp. 50, 52 (E.D.N.Y.), aff'd, 99 F.3d 402 (2d Cir. 1995). Probable cause exists "when the arresting officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" Dzinanka v. County of Suffolk, 932 F. Supp. 59, 62 (E.D.N.Y. 1996) (quoting Calamia v. City of New York, 879 F.2d 1025, 1032 (2d Cir. 1989)); see also Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991), cert. denied, 505 U.S. 1221 (1992).

The existence of probable cause is a question for the jury where there is a dispute regarding the events leading to the arrest and where the question is factual in nature. See, e.g., Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); Moore v. Comesanas, 32 F.3d 670, 673 (2d Cir. 1994); Williams v. City of New York, No. 05 CV 10230, 2007 WL 2214390, at *6 (S.D.N.Y. July 26, 2007) (quoting Murphy v. Lynn, 118 F.3d at 947); see also Collom v. Incorporated Vill. of Freeport, New York, 691 F. Supp. 637, 640 (E.D.N.Y. 1988) (noting that "where the evidence is conflicting such that reasonable persons might draw differing inferences, then the question of probable cause is ordinarily for the jury to decide"). Probable cause is to be determined based on the "totality of the circumstances." See Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002); Calamia v. City of New York, 879 F.2d at 1025.

b. The November 30, 2015 Arrest

The City defendants argue that the proposed Amended Complaint fails to state a claim for false arrest because on November 30, 2015, the officers had probable cause to arrest plaintiff based on the written complaint filed by Diana Chroscielewski on November 18, 2015. (City Defs.' Mem. at 9). As described above, this complaint alleges that plaintiff violated the April Order of Protection at the movie theater on November 13, 2015. (Prop. Am. Compl. ¶¶ 29-30).

"When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." Liang v. City of New York, No. 10 CV 3089, 2013 WL 5366394, at *6 (E.D.N.Y. Sept. 24, 2013) (quoting Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) (internal quotation marks omitted); see also Singer v. Fulton County Sheriff, 63 F.3d at 119. Indeed, in Liang v. City of New York, 2013 WL 5366394, at *6-7, the court found that there was probable cause to arrest the plaintiff for violating an order of protection following complaints from the complaining victim, who claimed that the violations had occurred. See also Carthew v. County of Suffolk, 709 F. Supp. 2d 188, 197 (E.D.N.Y. 2010) (dismissing false arrest claim where officer had probable cause based on report of violation of protective order); Dudley v. Torres, No. 05 CV 1729, 2008 WL 2149603, at *4-5 (E.D.N.Y. May 21, 2008) (finding probable cause even though plaintiff claimed he did not do anything and told that to the police officer upon his arrest). In Welch v. City of New York, the court found that the officer had probable cause to arrest plaintiff despite the fact that the order of protection had expired because the officer had a reasonable basis to believe the order was still in effect. No. 95 CV 8953, 1997 WL 436382, *5 (S.D.N.Y. Aug. 4, 1997), aff'd, 166 F.3d 1203 (2d Cir. 1998).

Plaintiff asserts that while probable cause may exist based on a putative victim's statement, there is no probable cause when the circumstances indicate that there is a reason to question the

victim's veracity. (Pl.'s Reply at 4). Here, plaintiff argues that there was no probable cause for the November 30th arrest as shown by the fact that two other officers had previously made such a determination and declined to arrest plaintiff on the night of the incident, November 13. (Id.) Plaintiff argues that had defendants Calix and Phillips conducted a proper investigation into their own precinct's records, they would have seen the earlier report which, on its face, raised issues as to Diana Chroscielewski's veracity. (Id.) Citing Manganiello v. City of New York, 612 F.3d 149 (2d Cir. 2010), plaintiff argues that defendants had a duty to investigate Diana Chroscielewski's claim before arresting plaintiff particularly since two weeks elapsed between the date of her report at the precinct and the date the officers finally found the plaintiff to arrest him. (Pl.'s Reply at 4-5). In Manganiello, the court held that "the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." 612 F.3d at 161 (citations omitted).

The City defendants properly note that probable cause is based on what the officer knew at the time of arrest. (City Defs.' Mem. at 7). Here, although the defendant detectives had a signed, written statement from Diana Chroscielewski, claiming that plaintiff had pushed her and harassed her, and had otherwise violated the April Order of Protection by following defendant Diana Chroscielewski and her daughter to the movie theater, the Court has no information at this time as to what steps, if any, the officers took to investigate the veracity of her report, and what other information they might have possessed when deciding to act on her report. Indeed, it is not known whether the officers made any effort to even verify the existence or the terms of the Order of Protection before effecting the arrest. Furthermore, to the extent that Diana Chroscielewski's allegations about the movie theater incident could have given rise to probable cause to arrest regardless of whether an Order of Protection was in effect, the Court has no information as to what

steps the officers took to investigate these claims, including interviewing plaintiff's daughter or

other witnesses who were at the movie theater on November 13.[8]

In essence, defendants are asking the Court to grant summary judgment on the issue of

probable cause, which the Court is not in a position to do at this pleading stage of the litigation,

precisely because it is unknown exactly what the officers knew at the time of the arrest.[9]  Until

discovery has been conducted and what was known to the officers at the time is determined, the

Court grants the motion to amend to add the claims of false arrest against Detectives Calix and

Phillips.[10]

### c.  The December 14, 2015 Arrest

The City defendants argue that there was probable cause to arrest plaintiff on December 14,

2015 because after Diana Chroscielewski made her 911 call about plaintiff trying to enter the home

---

[8]In urging the Court to deny the amendment, the City defendants argue that the Court should take judicial notice of "the arrest reports, complaint reports, and criminal complaint prepared in the underlying criminal matter."  (City Defs.' Mem. at 5).  However, even if the Court were to do so at this time, the records which defendants have included do not provide any additional information that would persuade the Court to alter its conclusion.  That is, the records do not speak to what steps, if any, were taken to investigate the veracity of Diana Chroscielewski's report so that the Court should, essentially, recommend dismissing *all* claims at this early stage in the litigation.

[9]The parties have exchanged initial disclosures, document requests, and interrogatories in this case. However, no depositions have been taken as of yet.

[10] Defendants contend that the proposed Amended Complaint fails to state a claim against Detective Phillips based on his issuance of the I-Card.  (Defs.' Mem. at 8 (citing Nansaram v. City of N.Y., No. 12 CV 5038, 2015 U.S. Dist. LEXIS 124692, at *28 n.14 (E.D.N.Y. July 2, 2015) (holding that "the issuance of the I-Card cannot in itself form the basis for a false arrest claim").  However, as discussed above, Detective Phillips is alleged to have played a larger role in the November 30 arrest than simply issuing the I-Card.  (Pl.'s Reply at 5).  He is alleged to have participated in the interview of Diana Chroscielewski on November 20, 2015, and he is alleged to have failed to take any steps to verify her account prior to issuing the I-Card and allowing plaintiff to be arrested without probable cause.  (Id.)  Again, absent any discovery as to what Detective Phillips did as a result of the interview and what he knew when authorizing plaintiff's arrest, the Court finds that it is premature to make a finding that the detective played no role in the arrest of plaintiff, or to make a determination regarding his knowledge at the time of arrest for purposes of assessing probable cause.

in violation of the Order of Protection, the officers checked and determined that there was an outstanding Order of Protection. (City Defs.' Mem. at 8). Defendants note that even when records are later determined to be erroneous, an officer is entitled to rely on them in making a determination of probable cause to arrest. (Id. (citing Bernard v. United States, 25 F.3d 98, 103 (2d Cir. 1994); Welch v. City of New York, No. 95 CV 8953, 1997 U.S. Dist. LEXIS 11184 (S.D.N.Y. Aug. 4, 1997); Valcarcel v. City of New York, No. 13 CV 1740, 2014 U.S. Dist. LEXIS 122864, *3 (E.D.N.Y. July 29, 2014)). According to the allegations in the proposed Amended Complaint, plaintiff informed the officers about the history of the Orders of Protection that barred him from going near his wife and that he had immediately returned to the home after the court proceeding in which the most recent Order had been dismissed. (Prop. Am. Compl. ¶ 61).

"[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); see also Dufort v. City of New York, No. 16 CV 1715, 2017 WL 4847620, *5 (2d Cir. Oct. 27, 2017). Where there is a dispute about the facts relied upon by the officers and the officers' knowledge at the time of arrest, those are questions to be resolved by a jury; only "'where there is no dispute as to what facts were relied on to demonstrate probable cause, [is] the existence of probable cause. . . a question of law for the court.'" Dufort v. City of New York, 2017 WL 4847620, *5 (quoting Walczyk v. Rio. 496 F.3d 139, 157 (2d Cir. 2007)).

Plaintiff contends, however, that here the officers were made aware of the existing bitter relationship between plaintiff and his wife and that they had a duty to "explore and eliminate every theoretically plausible claim of innocence before making an arrest." Ricciuti v. NYC Transit Authority, 124 F.3d, 128 (2d Cir. 1991). Plaintiff contends that even though he showed the

officers the documents with the dismissal bearing the raised court seal, they refused to investigate

further and simply chose to believe the claims of Diana Chroscielewski that the Order of

Protection was in effect. (Pl.'s Reply at 6). Plaintiff contends that given the documentary

evidence, the officers were under an obligation to investigate further. See Mistretta v. Prokesch, 5

F. Supp. 2d 128 (E.D.N.Y. 1998) (holding that where a bitter prior relationship exists "and is

known to the arresting officer before the arrest is made, the complaint alone may not constitute

probable cause; the officer may need to investigate further"). Indeed, plaintiff alleges that, instead

of investigating further, defendants Fox and P.O. John Doe assisted Diana Chroscielewski in

making a new complaint. (Prop. Am. Comp. ¶ 69).

Based on the allegations in the proposed Amended Complaint and the fact that this case is

still in the pleading stage, the Court finds that plaintiff has stated a plausible claim against the

officers for false arrest on December 14, 2015.


2. Malicious Prosecution

The City defendants move to dismiss plaintiff's claim of malicious prosecution against

defendant Calix on the grounds that the detective did not initiate criminal proceedings against the

plaintiff when plaintiff was charged on November 30, 2015, and because there was probable cause

for the arrest. (City Defs.' Mem. at 10-11).

Like the claim for false arrest, a claim for malicious prosecution under Section 1983 is

governed by the elements of the common law tort of malicious prosecution. See Decker v.

Campus, 981 F. Supp. 851, 860 (S.D.N.Y. 1997). Under New York State law, a plaintiff seeking

to pursue a claim of malicious prosecution must prove: "(1) the initiation or continuation of a

criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack

of probable cause for commencing the proceeding; and (4) actual malice as a motivation for

defendant's action." Russell v. Smith, 68 F.3d at 36; see also Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991); Collom v. Incorporated Vill. of Freeport, N.Y., 691 F. Supp. at 640. In addition, the alleged violation must have been effectuated "pursuant to legal process." See Singer v. Fulton County Sheriff, 63 F.3d at 116–17 (quoting Heck v. Humphrey, 512 U.S. 477, 484 (1994)).

As to the first element of the test, defendants argue that "'New York law imposes a presumption that a prosecutor exercises his own independent judgment in deciding to prosecute a criminal defendant.'" (City Defs.' Mem. at 11 (quoting Guzman v. United States, No. 11 CV 5834, 2013 U.S. Dist. LEXIS 131684 at *19 (S.D.N.Y. Feb. 14, 2013)). Defendants contend that plaintiff has failed to overcome the presumption that the Queens County District Attorney's Office made an independent decision to initiate and pursue the prosecution of plaintiff following his arrest on November 30, 2015. (Id.) Defendants argue that "'once a criminal defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution.'" (Id. (quoting Smith v. City of New York, No. 04 CV 3286, 2010 U.S. Dist. LEXIS at *22 (S.D.N.Y. Aug. 27, 2010)). Defendants argue that because there is no allegation in the Amended Complaint that the detective encouraged the prosecutor or played any other role in the prosecution of plaintiff, the malicious prosecution claim against Detective Calix is futile and subject to dismissal. (Id.)

Plaintiff argues that Detective Calix swore to the criminal complaint which formed the basis for the prosecutor's decision to proceed to arraignment. (Pl.'s Reply at 7). In Alcantara v. City of New York, the court held that "[w]here the defendant in a malicious prosecution action is a police officer, 'courts have found a triable issue of fact as to the initiation element where the defendant-officer brought formal charges and had the person arraigned, filled out complaining and corroborating affidavits, swore to and signed a felony complaint, or created false information and

forwarded it to the prosecutors.'" 646 F. Supp. 2d 449 (S.D.N.Y. 2009) (citing <u>Espada v. Schneider</u>, 522 F. Supp. 2d 544, 553 (S.D.N.Y. 2007)). <u>See also</u> <u>Bermudez v. City of New York</u>, 790 F.3d 368, 374-76 (2d Cir. 2015) (holding that a district attorney's decision to prosecute a suspect did not constitute an intervening cause as to the initiation element if the prosecutor was "not informed of the alleged problems with the evidence"); <u>Manganiello v. City of New York,</u> 612 F.3d 149 (2010); <u>Llerando v. City of New York</u>, 390 F. Supp. 2d 372, 382-83 (S.D.N.Y. 2005).

Plaintiff also argues that the malicious prosecution claim is not futile because, as set forth above, there was no probable cause for the arrest. (Pl.'s Reply at 7). Where there is an absence of probable cause, the plaintiff may infer that the arrest was undertaken with malicious intent on the part of the accuser. <u>Lowth v. Town of Cheektowaga</u>, 82 F.3d 563, 573 (2d Cir. 1996). With respect to the issue of probable cause, probable cause to prosecute has been defined under New York law as "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." <u>Rounseville v. Zahl</u>, 13 F.3d 625, 629 (2d Cir. 1994) (quoting <u>Pandolfo v. U.A. Cable Sys. of Watertown</u>, 171 A.D. 2d 1013, 1013, 568 N.Y.S.2d 981, 982 (4th Dep't 1991)); <u>accord</u> <u>Decker v. Campus</u>, 981 F. Supp. at 860. Although similar to the inquiry conducted with respect to a claim of false arrest, the determination of whether sufficient probable cause exists to defeat a claim of malicious prosecution must be made as of the time the accused was charged, arraigned, or indicted. <u>See, e.g.</u>, <u>Decker v. Campus</u>, 981 F. Supp. at 860 (discussing arraignment); <u>see also</u> <u>Singer v. Fulton County Sheriff</u>, 63 F.3d at 117 (stating "the tort of malicious prosecution . . . implicate[s] post-arraignment deprivations of liberty").

In order to pursue a malicious prosecution claim, the alleged violation must have been effectuated "pursuant to legal process." <u>Singer v. Fulton County Sheriff</u>, 63 F.3d at 116–17. "A warrantless arrest made prior to arraignment does not constitute 'legal process.'" <u>Dzinanka v.</u>

County of Suffolk, 932 F. Supp. at 62. "[L]egal process" typically takes the form of an arrest warrant or arraignment. Thus, when there has been a warrantless arrest, "the circumstances of the allegedly improper arrest . . . are of no consequence to the malicious prosecution claim." Id.

It is clear that the presence of probable cause for the arrest is a complete defense to a claim of malicious prosecution, see Bernard v. United States, 25 F.3d at 104 (holding that plaintiff's indictment constituted probable cause for his arrest sufficient to defeat his claim of malicious prosecution). However, "if, subsequent to an individual's arrest, new facts were to arise which made it apparent to investigators that the charges against the individual were groundless, probable cause would no longer exist." Coleman v. City of New York, 177 F. Supp. 2d 151, 158 (S.D.N.Y. 2001), aff'd, 49 Fed. App'x 342 (2d Cir. 2002). In other words, the jury may find that "between the [time of] the arrest[ ] and the prosecution the authorities became aware of evidence exonerating the accused," and therefore negate an initial finding of probable cause. Collom v. Incorporated Vill. of Freeport, N.Y., 691 F. Supp. at 640. "The burden is on the plaintiff to show that additional facts have come to light that negate an initial finding of probable cause. Dukes v. City of New York, 879 F. Supp. at 341-42. If there is a factual dispute as to the events that would determine probable cause, the issue must be determined by the trier of fact. See Collom v. Incorporated Vill. of Freeport, N.Y., 691 F. Supp. at 640; see also Cox v. County of Suffolk, 780 F. Supp. 103, 108 (E.D.N.Y. 1991) (holding that the existence of probable cause to arrest does not mean that there is necessarily probable cause to prosecute).

As discussed supra, plaintiff contends that Detective Calix was assigned to investigate the claims made to the police by Diana Chroscielewski, and that he failed to conduct a full inquiry. (Pl.'s Reply at 4). Plaintiff contends that a more thorough inquiry would have shown that, contrary to her statements, Diana Chroscielewski had reported the incident previously and a decision had been made not to arrest plaintiff based on that evidence. (Id.) Since the Court has already

determined that it would be premature to decide the issue of probable cause or the lack thereof as it relates to the false arrest claim, the Court finds that the malicious prosecution claim should be allowed to proceed as well, so that discovery as to what the officer knew at the time of the filing of the criminal complaint can be conducted before considering whether the facts here support a claim for malicious prosecution.

3. <u>Qualified Immunity</u>

The City defendants argue that even if the Court finds that there was no probable cause for the arrest, the claims against the officers should be dismissed on grounds of qualified immunity because it was objectively reasonable for the officers to believe that probable cause existed or that officers of reasonable competence could disagree on the existence of probable cause. (<u>See</u> City Defs.' Mem. at 13 (citing <u>O'Neill v. Town of Babylon</u>, 986 F.2d 646, 649-50 (2d Cir. 1993)).

It is well-established that police officers are afforded the defense of qualified immunity from suits for damages resulting from an incident arising from their official conduct. <u>Anderson v. Creighton</u>, 483 U.S. 635, 638-41 (1987); <u>Lennon v. Miller</u>, 66 F.3d at 420. The qualified immunity defense reflects an attempt by the courts to balance the competing interests of "a damages remedy to protect the rights of citizens" with "'the need to protect officials who are required to exercise discretion and the related public interest in encouraging the vigorous exercise of official authority.'" <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 807 (1982) (quoting <u>Butz v. Economou</u>, 438 U.S. 478, 506 (1978)). Redefining the limits of qualified immunity in essentially objective terms, the court in <u>Harlow v. Fitzgerald</u> held that qualified immunity shields government actors from liability for damages when they are sued in their personal capacity, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818. <u>See</u> <u>also</u> <u>Abdush-Shahid v. Coughlin</u>, 933 F. Supp.

168, 184-85 (N.D.N.Y. 1996).  Accordingly, if the law was clearly established, then an immunity defense will generally fail, "since a reasonably competent public official should know the law governing his conduct."  Harlow v. Fitzgerald, 457 U.S. at 819.  If the official "can prove that he neither knew nor should have known of the relevant legal standard," however, then the defense should succeed.  Id.

Thus, to establish a qualified immunity defense, an officer must show "either that his conduct did not violate 'clearly established rights' of which a reasonable person would have known, or that it was 'objectively reasonable' to believe that his acts did not violate these clearly established rights."  Finnegan v. Fountain, 915 F.2d 817, 823 (2d Cir. 1990) (citing Warren v. Dwyer, 906 F.2d 70, 74 (2d Cir.), cert. denied, 498 U.S. 967 (1990), and Calamia v. City of New York, 879 F.2d at 1035)).  In conducting this inquiry, courts should examine the unique facts and circumstances of each case to determine whether "[t]he contours of the right . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . ."  Id. (quoting Anderson v. Creighton, 483 U.S. at 640).

However, in order for the court to determine whether the conduct of the officer was "objectively reasonable," the court must first determine what the circumstances were and what actions the officer took in response.  The inquiry "requires careful attention to the facts and circumstances of each particular case . . . ."  Soares v. State of Connecticut, 8 F.3d 917, 922 (2d Cir. 1993)), aff'd, 196 F.3d 330 (2d Cir. 1999). "Three factors are pertinent in determining whether a legal rule was 'clearly established' at the time of the challenged action: (1) whether the right in question was defined with 'reasonable specificity;' (2) whether the decisional law of the Supreme Court and the Second Circuit supports the existence of the right in question; and (3) whether, under pre-existing law, a reasonable official would have understood that his or her acts were unlawful." Warren v. Keane, 937 F. Supp. 301, 306 (S.D.N.Y. 1996) (citing Soares v. State of Connecticut, 8

F.3d at 922); <u>see</u> <u>also</u> <u>Rodriguez v. Phillips</u>, 66 F.3d 470, 476 (2d Cir. 1995). In seeking to support a claim for qualified immunity, the defendants must establish by a preponderance of the evidence that "'they did not know and reasonably should not have known that their actions would constitute a violation of plaintiff's constitutional rights.'" <u>Garcia v. Senkowski</u>, 919 F. Supp. 609, 616 (N.D.N.Y. 1996) (quoting <u>Redcross v. County of Rennselaer</u>, 511 F. Supp. 364, 372 (N.D.N.Y. 1981)).

Defendants argue that, because the officers' decisions to arrest and prosecute plaintiff were based on Diana Chroscielewski's complaints, it was "objectively reasonable for the officers involved to believe that probable cause existed," and, therefore, to effectuate the December arrest. (City Defs.' Mem. at 14).

In response, plaintiff contends that there were documents in the City defendants' possession that refuted Diana Chroscielewski's accusations. (Pl.'s Reply at 8). Plaintiff maintains that the City defendants failed to act as "objectively reasonable detectives" when they did not undertake to review the records of their own precinct, and otherwise failed to do their job to investigate. (<u>Id.</u>) "Officers should not be permitted to turn a blind eye to exculpatory information that is available to them and instead support their actions on selected facts they chose to focus upon." <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1228 (11th Cir. 2004). <u>See</u> <u>also</u> <u>Kerman v. City of New York</u>, 374 F.3d 93, 99 (2d Cir. 2004) (holding that a police officer is not "free to disregard plainly exculpatory evidence").

Moreover, even though plaintiff presented the officers with an official, stamped court document showing that the charges had been dismissed, the officers relied on the absence of the record in the system to disregard plaintiff's representation that the charges had been dismissed. (Pl.'s Reply at 9). The Court agrees with plaintiff that, when presented with an official stamped document of the court, it was not reasonable for the officers to conclude that the order was not

genuine simply because it was not reflected in the computer system only hours after the dismissal. (Id.) Had the officers actually doubted the authenticity of the Order, they could have contacted the courthouse to confirm the truth of the plaintiff's claim. (Id.) Instead, plaintiff argues that they chose to believe the complaints of Diana Chroscielewski over the court order and took no further action to verify the bona fides of her claims, even though the officers were or should have been aware of the history between the two. Again, in the absence of discovery, it is unknown what the officers knew, what steps they took in light of evidence before them at the time, and what caused them to take the actions they took. Until that information is known through additional discovery, it is impossible to determine that it was "objectively reasonable" for the officers to believe probable cause existed to arrest plaintiff despite the court order

Therefore, the Court grants plaintiff's motion to amend, and that the officers' request for a defense of qualified immunity is denied at this time.


### 4. Municipal Liability/Respondeat Superior

Defendants argue that plaintiff has failed to plausibly plead the elements of a claim for municipal liability pursuant to Section 1983. (City Defs.' Mem. at 15). Specifically, in order to hold the City liable for a violation of Section 1983, the plaintiff must plead: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 190 (2d Cir. 2007); Rodriguez v. Winski, 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013). Defendants contend that first there must be a showing of constitutional violation by a municipal actor and, even assuming that a constitutional violation was adequately pleaded, plaintiff fails to plead the existence of a custom or policy which caused the violation. (City Defs.' Mem. at 16). Defendants contend that plaintiff has failed to allege the existence of 1) a formal municipal custom or policy; 2) action taken by policymakers that caused

the violation of the plaintiff's rights; 3) a practice so persistent or widespread that it constitutes a "custom or usage;" or 4) a failure to properly train or supervise City employees.  (Id. (citing Moray v. City of Yonkers, 924 F. Supp. 8, 12 (S.D.N.Y. 1996)).

Plaintiff claims that he is not asserting a Monell claim, nor is he asserting a claim for municipal liability.  (Pl.'s Reply at 9).  Plaintiff claims instead that the City defendants committed these intentional torts within the scope of their employment by the City.  (Id.)  He claims that he is only asserting an action against the City as employer based on the doctrine of respondeat superior. (Id.)  To this end, defendants note that "to the extent that [plaintiff's proposed claims against the City of New York] are brought pursuant to the common law doctrine of *respondeat superior* under New York state law, they fail as described *supra,* because Plaintiff has failed to adequately plead the underlying torts and thus the City cannot be held vicariously liable."  (City Defs.' Mem. at 16 n.2).

Defendants are correct that "[m]unicipal liability in actions brought under § 1983 may not be premised on respondeat superior." McGrath v. Nassau Health Care Corp., 217 F. Supp. 2d 319, 330 (E.D.N.Y.2002) (citing Ciraolo v. City of New York, 216 F.3d 236, 242 (2d Cir.2000); Clue v. Johnson, 179 F.3d 57, 62 (2d Cir.1999); Schwimmer v. Kaladjian, 164 F.3d 619, 1998 WL 708818, at *3 (2d Cir. 1998)).

However, "the City of New York may be held vicariously liable for an intentional tort committed by a police officer under the theory of respondeat superior."  Hearst v. City of New York, 2012 WL 1020041, (E.D.N.Y. Feb. 21, 2012), at *3 (citing (Reape v. Berrios, No. 09 CV 1363, 2011 WL 1579080, at *4 (E.D.N.Y. Mar. 29, 2011) (internal citations omitted)).  Under New York law, a plaintiff invoking the doctrine of respondeat superior has the burden of establishing that the act complained of occurred while the defendant's employee was acting within

the scope of his employment with the City of New York. Id. (citing McDowell v. City of New York, 208 A.D.2d 507, 616 N.Y.S.2d 788, 789 (2d Dep't 1994)).

In this case, contrary to the City defendants' assertion, the plaintiff *has* adequately pleaded the underlying torts, described supra. At this stage of the litigation, there is no evidence to suggest that the individual officers were not acting within the scope of their employment with the City, nor do the City defendants suggest as much.

Accordingly, the Court concludes that plaintiff's state law claims, over which this Court may exercise supplemental jurisdiction, should proceed against the City of New York under the doctrine of respondeat superior.

C. Bad Faith and Delay

Defendant Diana Chroscielewski argues that the motion to amend should be denied due to the bad faith and undue delay exhibited by plaintiff in waiting to raise these claims nearly three years after the commencement of the action, particularly when the plaintiff was aware of the state law claims at the time the Amended Complaint was filed. (Def. Chroscielewski Mem. at 7). Defendant argues that she will suffer undue prejudice in that she would have conducted different discovery had she known the identity of the newly added defendants. (Id.) Defendant also argues that plaintiff's amendment was a delay tactic, just as was his failure to provide discovery responses. (Id. at 8). Defendant contends that plaintiff could have clarified the names of the officers through the police incident report and that his actions in this instance are "analogous to tactics related to the various lawsuits that Plaintiff and Defendant are involved in." (Id. at 12).[11]

---

[11] Plaintiff objects to the filings by defendant Chroscielewski on the grounds that her affidavit is not in compliance with Local Rule 7.1 because it contains allegations that are irrelevant to the motion to amend and it contains assumptions and opinions, but not statements of facts. (Pl.'s Reply at 2). Plaintiff also objects to the Affirmation and Memorandum of Law of Camille C. Fouche, Esq. on the grounds that it is identical to the defendant's affidavit. (Id. at 3). Finally,

It is clear that plaintiff bears the burden of explaining a delay in seeking to amend the complaint. See Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 47 (2d Cir. 1983). On the other hand, delay alone, without a showing of bad faith or prejudice, is not sufficient grounds for a court to deny leave to amend. Block v. First Blood Assocs., 988 F.2d at 350 (quoting State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d at 856). While any delay in asserting claims will result in some prejudice to the opposing party, the Second Circuit has found that "'the length of the delay [must be balanced] against the resulting prejudice . . . [T]he longer the period of unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.'" Id. at 46-47 (quoting Advocat v. Nexus Indust., Inc., 497 F. Supp. 328, 331 (D. Del. 1980)); see also Johnson v. Methodist Med. Ctr. of Ill., 10 F.3d 1300, 1303-04 (7th Cir. 1993) (affirming denial of leave to amend where plaintiff's attorney was aware of specific allegations but did not feel it necessary to include them in the pleadings until after the motion for summary judgment was filed), cert. denied, 511 U.S. 1107 (1994); Ansam Assocs., Inc. v. Cola Petroleum Ltd., 760 F.2d 442, 446 (2d Cir. 1985) (affirming denial of leave to amend where new counsel was substituted and discovered new information that resulted in allegations of new omissions and new facts and where a motion for summary judgment had already been filed).

Plaintiff contends that apart from complaining about delay, defendant Chroscielewski fails to set forth any manner in which she will be prejudiced by the amendments. (Pl.'s Reply at 3). Plaintiff responds that there will be no delay; discovery demands have been responded to and the plaintiff is ready to take depositions and be deposed. (Id.) More importantly, the proposed amendments have no impact on Diana Chroscielewski in that they do not add any additional claims against her that would require her to litigate her case any differently. (Id.)

plaintiff objects on the grounds that defendant Chroscielewski has no standing to complain about the addition of Detective Phillips and the substitution of Fox and Failla. (Id.) The Court does not express an opinion as to the potential merits of these claims or defenses at this time.

Given that the amendments largely impact the City defendants, and given that Diana

Chroscielewski has failed to set forth any specific prejudice or evidence of bad faith, apart from

delay generally, the Court grants the motion to amend.


CONCLUSION

Taking into account the City defendants' and defendant Diana Chroscielewski's

opposition, the Court grants plaintiff's motion to amend.

The Clerk is directed to send copies of this Order to the parties either electronically through

the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED**.

Dated:  Brooklyn, New York
        January 08, 2018

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York