UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
MARK CHROSCIELEWSKI,

                Plaintiff,

-against-

DETECTIVE MILTON CALIX, *et al.*,

                Defendants.
----------------------------------------------------------x

**MEMORANDUM AND ORDER**
16-CV-6640 (RRM) (CLP)

ROSLYNN R. MAUSKOPF, United States District Judge.

In November 2016, plaintiff Mark Chroscielewski ("Plaintiff") commenced this civil rights action against the City of New York ("the City"); his estranged wife, Diana Chroscielewski ("Chroscielewski"); Detective Milton Calix, who arrested him on November 30, 2015; and three New York Police Department ("NYPD") employees – Sergeant "Richard Roe" and Police Officers "John Doe" and "Jane Doe" – who were involved in arresting Plaintiff on December 14, 2015. Magistrate Judge Cheryl L. Pollak granted Plaintiff's motion to amend his complaint 1) to substitute Sergeant Luis Failla and Police Officer Meaghan Fox for "Richard Roe" and "Jane Doe"; 2) to implead Calix's partner, Detective James Phillips; and 3) to modify other allegations in the original complaint. (Doc. No. 42 ("Prior Order")). The City and Calix (collectively, the "City Defendants") have filed objections to the Prior Order pursuant to Federal Rule of Civil Procedure 72(a), arguing that some portions of the Prior Order were clearly erroneous and contrary to law. For the reasons set forth below, the Court rejects those objections and directs Plaintiff to file his Proposed Amended Complaint (Doc. No. 35-2) as the Amended Complaint within 14 days of the date of this Memorandum and Order.

BACKGROUND

According to Plaintiff's complaint (Doc. No. 1), the allegations of which are assumed to be true for purposes of this Memorandum and Order, Plaintiff was arrested three times in 2015. The first arrest, which occurred on April 2, 2015, was pursuant to a complaint from Chroscielewski. (Compl. at ¶ 40.) Plaintiff's pleading makes no claims pertaining to this arrest and does not discuss the substance of Chroscielewski's complaint. However, it notes that, as a result of this arrest, an order of protection was issued in favor of Chroscielewski, which was "scheduled to expire on November 30, 2015." (*Id.* at ¶ 32.)

On November 13, 2015, Plaintiff took his daughter to a movie at a multiplex in Queens. (*Id.* at ¶ 22.) Around 9:33 p.m. – 20 minutes after they arrived – the daughter received a text message from her mother, Chroscielewski, asking which auditorium she and Plaintiff were in. (*Id.* at ¶ 24.) About 45 minutes later, Plaintiff received an alert informing him that one of his telephones had called 911. (*Id.* at ¶ 26.) Fifteen minutes after that, a theater employee escorted them out of the auditorium to meet with police officers who had responded to the 911 call. (*Id.* at ¶ 27.) The officers explained that Chroscielewski had called to allege that Plaintiff had followed her and the daughter to the theater in violation of the order of protection. (*Id.* at ¶ 28.) They further stated that Chroscielewski alleged that Plaintiff had assaulted her in the theater. (*Id.* at ¶ 29.) After Plaintiff denied the allegations, the officers spoke to theater employees and the daughter, who showed them Chroscielewski's text messages. (*Id.* at ¶¶ 30, 33–34.) Upon concluding their investigation, the officers apologized to Plaintiff and his daughter and left the theater. (*Id.* at ¶ 35.)

Plaintiff's second arrest occurred on November 30, 2015, just after the charges stemming from Plaintiff's April 2, 2015, arrest were dismissed on statutory speedy trial grounds in the

Criminal Court of the City of New York, Queens County. (*Id.* at ¶ 40.) According to the original complaint, Chroscielewski contacted Detective Calix earlier that day and again complained about Plaintiff's actions at the multiplex on November 13, 2015. This time, she alleged that he had "approached her and pushed past her in such a manner as to cause her annoyance and alarm." (*Id.* at ¶ 36.) Calix did not speak to Plaintiff's daughter or to the officers who had responded to the theater. (*Id.* at ¶ 38.) Rather, based on Chroscielewski's allegations, Calix arrested Plaintiff as he was leaving Criminal Court and charged him with criminal contempt in the second degree and harassment in the second degree. (*Id.* at ¶¶ 37, 41.) Plaintiff was held for 24 hours before he was arraigned and released on recognizance. (*Id.* at ¶ 42.)

On December 14, 2015, those charges were dismissed upon the motion of the Queens County District Attorney. (*Id.* at ¶¶ 43–44.) At the same time, a temporary order of protection which had been issued at the time of Plaintiff's arraignment on those charges was vacated. (*Id.* at ¶ 46.) Before leaving Criminal Court, Plaintiff received a certificate of disposition with a raised seal on it, proving that those charges had been dismissed. (*Id.* at ¶ 45.)

Plaintiff's third arrest occurred on the evening of December 14, after Plaintiff returned home to the house he shared with Chroscielewski. (*Id.* at ¶ 47.) Unaware that the temporary order of protection had been vacated earlier that day, Chroscielewski refused him entry and called 911. (*Id.* at ¶¶ 48–49.) Two officers from the 105th Precinct – John and Jane Doe – responded to the call and spoke to Plaintiff, who was standing outside the house. (*Id.* at ¶ 50.) After he showed them "both the certificate of disposition and the temporary order of protection that had been vacated earlier in the day," the officers entered the house to talk to Chroscielewski. (*Id.* at ¶¶ 51–52.) After several minutes, they exited the house and told Plaintiff that there was an order of protection in effect. (*Id.* at ¶¶ 53–54.) Plaintiff disputed this, pointing out that the

temporary order of protection stated that it would expire "upon the case's disposition," and that the "certificate of disposition conclusively demonstrated that the criminal prosecution had been dismissed." (*Id.* at ¶¶ 55–56.) The officers then went back inside the house, where they remained for more than an hour. (*Id.* at ¶¶ 57–58.)

When they emerged from the house for a second time, they informed Plaintiff that Chroscielewski was unaware that the order of protection had been vacated and was swearing out a new complaint, accusing Plaintiff of harassment and violating the order. (*Id.* at ¶ 58.) For the third time, Plaintiff showed the officers the documents establishing that the temporary order of protection had been vacated. (*Id.* at ¶ 60.) However, John Doe told Plaintiff that the NYPD's computer did not show that the order had been vacated, that he was not an attorney, and that defendant Sergeant Richard Roe had instructed him, based on information communicated to him by John Doe, to arrest Plaintiff. (*Id.* at ¶¶ 61–63.)

John and Jane Doe handcuffed Plaintiff and took him to the 105th Precinct. (*Id.* at ¶¶ 62, 64.) However, the Queens County District Attorney dismissed the case against Plaintiff prior to arraignment. (*Id.* at ¶ 67.) At around 10:00 a.m. on December 15, 2015, Plaintiff was released from Queens Central Booking without ever appearing before a judge. (*Id.* at ¶ 66.)

On November 30, 2016, after filing notices of claim with the Comptroller of the City of New York and receiving no response, (*id.* at ¶¶ 16–17), Plaintiff commenced this action. The original complaint alleges six causes of action. The first cause of action advances a § 1983 claim against Calix, Roe and the two Does, alleging that they arrested him without probable cause and that Calix maliciously prosecuted him. The second and third causes of action allege false arrest and malicious prosecution claims against Calix and the City, respectively. The fourth and fifth causes of action allege false arrest and malicious prosecution claims, respectively, against

4

Chroscielewski. Finally, the sixth cause of action alleges false arrest claims against the City, Roe and the two Does.

The Motion to Amend

In September 2017, Plaintiff moved to amend his complaint in three respects. First, he sought to substitute Sergeant Luis Failla and Police Officer Meaghan Fox for "Richard Roe" and "Jane Doe." Second, he sought to implead Detective James Phillips, who, together with Calix, was assigned to investigate Chroscielewski's complaint about the November 13, 2015, incident at the multiplex. Third, Plaintiff sought to modify allegations in the original complaint, principally to add allegations concerning Phillips' actions. Specifically, Plaintiff's Proposed Amended Complaint ("PAC") alleged that Chroscielewski filed a police report relating to the November 13 incident on November 18, not November 30, 2015; that Calix and Phillips were assigned to investigate the report; that Phillips issued an "I-Card" for Plaintiff on November 19, 2015; that Phillips interviewed Chroscielewski on November 20, 2015; that Chroscielewski told Phillips that she had not reported the alleged harassment on November 13, 2015, because she was "shaken up about the incident"; that Phillips did not examine the records of the police officers who responded to the multiplex; and that Phillips and Calix went to Plaintiff's home on November 20, 2015, with the intent of arresting him. (PAC (Doc. No. 35-2) at ¶¶ 37–44.) The PAC contained the same six causes of action as the original complaint, but the first cause of action was amended to add Phillips to the list of police defendants who allegedly violated Plaintiff's Fourth and Fourteenth Amendment rights. (*Id.* at ¶¶ 80–81.)

The City Defendants opposed the motion to amend, arguing that the proposed amendments would be futile. In their Memorandum of Law in Opposition to Plaintiff's Motion to Amend ("Opposition Memo"), the City Defendants principally argued that there was probable

5

cause to arrest Plaintiff on November 30, 2015, and December 14, 2015, and that the existence of probable cause negates an element of both false arrest and malicious prosecution. In the alternative, they argued that there was at least arguable probable cause, which would give rise to qualified immunity.

On dated January 8, 2018, Judge Pollak issued the Prior Order, granting Plaintiff's motion to amend. Since familiarity with the Prior M&O is assumed, Judge Pollak's rationale need only be briefly summarized. Judge Pollak started from the premise that "[w]hen information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." (Prior Order (Doc. No. 42) at 12 (citing cases).) Citing to Plaintiff's contention that a "proper investigation" should have raised doubts as to Chroscielewski's veracity, Judge Pollak noted that the Court had "no information … as to what steps, if any, the officers took to investigate the veracity of her [November 18, 2015] report, and what other information they might have possessed when deciding to act on her report." (*Id.* at 13). Judge Pollak further noted that Plaintiff alleged that Officers Fox and John Doe "simply chose to believe the claims of … Chroscielewski that the Order of Protection was in effect" despite documentary evidence to the contrary and, "instead of investigating further, … assisted … Chroscielewski in making a new complaint" that justified the arrest. (*Id.* at 16). Judge Pollak concluded that the PAC stated plausible false arrest claims. (*Id.*)

Judge Pollak relied on this same conclusion in rejecting the City Defendants' contention that the PAC failed to allege plausible malicious prosecution claims. The Magistrate Judge stated:

> Since the Court has already determined that it would be premature to decide the issue of probable cause or the lack thereof as it relates to the false arrest claim, the Court finds that the malicious prosecution claim should be allowed to proceed as well, so that

6

> discovery as to what the officer knew at the time of the filing of the
> criminal complaint can be conducted before considering whether
> the facts here support a claim for malicious prosecution.

(*Id.* at 19–20.) Judge Pollak also rejected the argument that the malicious prosecution claim against Calix was futile because the Queens County District Attorney made an independent decision to pursue the prosecution, noting that Calix may not have informed the prosecutor of problems with the case.

Finally, Judge Pollak rejected the argument that allegations in the PAC itself established that the arresting officers were entitled to qualified immunity. Judge Pollak noted that the qualified immunity determination requires a court to "first determine what the circumstances were and what actions the officer took in response," with "'careful attention to the facts and circumstances of each particular case....'" (*Id.* at 21 (quoting *Soares v Connecticut*, 8 F.3d 917, 922 (2d Cir. 1993)). She implied that this determination was impossible at this juncture, since there were questions as to whether the officers' reliance on Chroscielewski's statements was "objectively reasonable." (*Id.* at 22.) Indeed, Judge Pollak held that it was not reasonable for Officers Fox and John Doe to conclude that Plaintiff's court documents were "not genuine simply because it was not reflected in the computer system only hours after the dismissal." (*Id.* at 22–23.)

The City Defendants' Objections

The City Defendants timely filed objections to the Prior Order pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, raising three points. First, with respect to Judge Pollak's probable cause determination, they argue that the Magistrate Judge erred in holding that the officers were obligated to investigate Chroscielewski's veracity and that the officers who arrested Plaintiff on December 14, 2015, were not required to – and could not have – conducted

a further investigation into whether the order of protection had been vacated. Second, the City Defendants argue that Judge Pollak erred in granting leave to implead Phillips, asserting that the false arrest claim against him is based solely on his issuance of an I-Card for Plaintiff's arrest. Third, the City Defendants argue Judge Pollak erred in concluding that the allegations in the PAC did not establish that all individual defendants were entitled to qualified immunity.

## STANDARD OF REVIEW

Rule 72(a) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1) provide that a party may serve and file written objections to a magistrate judge's order within 14 days after being served with a copy. "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "An order is 'clearly erroneous' only if a reviewing court, considering the entirety of the evidence, is left with the definite and firm conviction that a mistake has been committed; an order is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 954 F. Supp. 2d 127, 139 (E.D.N.Y. 2013) (quotations and citations omitted). "This standard is highly deferential [and] imposes a heavy burden on the objecting party ...." *Ahmed v. T.J. Maxx Corp.*, 103 F. Supp. 3d 343, 350 (E.D.N.Y. 2015) (quotations and citations omitted). "[T]he highly deferential standard only permits reversal where the magistrate judge abused her discretion." *Grief v. Nassau County*, 246 F. Supp. 3d 560, 564 (E.D.N.Y. 2017).

## DISCUSSION

The City Defendants' objections are timely, having been filed within 14 days of service of that Prior Order. The Court has considered these objections, but finds that the City

8

Defendants have not met their heavy burden of establishing that the Prior Order was clearly erroneous or contrary to law.

A. Probable Cause

The City Defendants' first objection faults Judge Pollak's refusal to find probable cause to arrest based on the allegations of Plaintiff's pleadings alone. It is well established that "[i]nformation about criminal activity provided by a single complainant can establish probable cause when that information is sufficiently reliable and corroborated." *Oliveira v. Mayer*, 23 F.3d 642, 647 (2d Cir. 1994). However, "[w]hen relying on a witness's report of a crime, the arresting officer may lack probable cause where there are 'circumstances that raise doubt as to the [witness's] veracity.'" *Defalco v. MTA Bus Co.*, No. 18-3007-CV, 2019 WL 4855464, at *2 (2d Cir. Oct. 2, 2019) (summary order) (quoting *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)).

In this case, the PAC itself alleges that the arresting officers received reports and/or statements from Chroscielewski accusing Plaintiff of criminal activity prior to making the two arrests at issue. However, as Judge Pollak correctly noted, it is unclear "what other information they might have possessed when deciding to act on her report." (Prior Order at 13.) If they had obtained information raising doubts as to Chroscielewski's veracity, her statements alone might not be enough to establish probable cause. *See Defalco*, 2019 WL 4855464, at *2. Under those circumstances, as Judge Pollak correctly notes, the Court would need to know "what steps, if any, the officers took to investigate the veracity of her ... report" before making the probable cause determination. (Prior Order at 13).

The City Defendants' objection as to Judge Pollak's refusal to find that Calix and Phillips had probable cause to arrest Plaintiff on November 20, 2015, relies on the unwarranted

9

assumption that the detectives did not conduct a thorough investigation of Chroscielewski's complaint and therefore did not uncover any circumstances raising doubt as to Chroscielewski's veracity in the course of their investigation. To be sure, Plaintiff's original complaint and PAC – both of which were drafted before much discovery had been completed – do not contain allegations that the detectives actually uncovered such circumstances. But allegations in the PAC imply that Phillips himself questioned Chroscielewski's veracity, asking why she "had not reported the November 13, 2015, incident at the time it occurred." (PAC at ¶ 41.) Chroscielewski alleged that she was too "shaken up" to do so. (*Id.*) If the detectives conducted any further investigation or talked to any eyewitnesses to the incident, however, they would have likely uncovered evidence that the Chroscielewski had not been so "shaken up" as to be unable to make other allegations against Plaintiff at the time of the incident and that those allegations proved to be demonstrably false. Although it is possible that the detectives conducted no investigation other than speaking to Chroscielewski and/or did not uncover further reasons to question her veracity, the Court cannot assume this. As Judge Pollak correctly noted, the City Defendants are essentially "asking the Court to grant summary judgment on the issue of probable cause" before knowing "exactly what the officers knew at the time of the arrest." (Prior Order at 14.) The Court agrees with Judge Pollak that it would be improper to do so.

The City Defendants' objection to Judge Pollak's refusal to find that Officers Fox and John Doe and Sergeant Failla had probable cause to arrest Plaintiff on December 14, 2015, is also without merit. The City Defendants correctly note that Fox and John Doe were "presented with a complaining witness who claimed to have a valid order of protection." (Objection at 8.) However, Plaintiff's pleadings allege that Plaintiff presented documentary evidence to conclusively disprove this claim. Although John Doe may have been unable to verify that fact

10

through a computer check, Judge Pollak did not commit clear error in holding that it was unreasonable for Officers Fox and John Doe to conclude that Plaintiff's court documents were "not genuine simply because it was not reflected in the computer system only hours after the dismissal." (Prior Order at 22–23.) The City Defendants' contention that Judge Pollak erred in holding that the "officers should have conducted a further investigation" since "it would have been impossible for the officers to contact either the criminal court or prosecutor" in the early evening, (Objections at 8), is simply unfounded. As Plaintiff correctly noted in his Reply Memorandum of Law in Support of his Motion to Amend Complaint ("Reply Memo"), the Arraignment Part of the Criminal Court of the City of New York, Queens County, operates until 1:00 a.m. (Reply Memo (Doc. No. 40) at 9; *see* http://ww2.nycourts.gov/court/nyc/criminal/ generalinfo.shtml#queens_county (last visited on Dec. 12, 2019)).

B. The Allegations against Detective Phillips

The City Defendants' second objection – that Judge Pollak erred in granting leave to implead Phillips because the false arrest claim against him is "based solely on his issuance of the I-Card for Plaintiff's arrest" – is predicated on a misreading of the PAC. To be sure, the PAC alleges that Phillips "activated an I-Card on plaintiff" on November 19, 2015, (PAC at ¶ 39), and there is case law stating that "the issuance of the I–Card cannot in itself form the basis for a false arrest claim." *Nansaram v. The City of New York*, No. 12-CV-5038 (NGG), 2015 WL 5475496, at *9 n.14 (E.D.N.Y. July 2, 2015), *report and recommendation adopted sub nom. Nansaram v. City of New York*, No. 12-CV-5038 (NGG) (RLM), 2015 WL 5518270 (E.D.N.Y. Sept. 17, 2015). However, the PAC does not allege that the issuance of the I-Card was Phillips' only action in connection with this case or that Plaintiff was arrested pursuant to this I-Card. As Judge Pollak correctly observed:

11

> Detective Phillips is alleged to have played a larger role in the
> November 30 arrest than simply issuing the I-Card. He is alleged
> to have participated in the interview of Diana Chroscielewski on
> November 20, 2015, and he is alleged to have failed to take any
> steps to verify her account ....

(Prior Order at 14, n.10). Following the interview with Chroscielewski, Phillips and/or his partner, Calix, made several unsuccessful attempts to arrest Plaintiff themselves. (PAC at ¶¶ 43–45.) Plaintiff was ultimately arrested by Calix, after that detective dispatched two police officers to bring him to 111th Precinct following Plaintiff's appearance in Queens County Criminal Court. (*Id.* at ¶¶ 50–51.) Accordingly, the City Defendants' assertion that the false arrest claim against Phillips is "based solely on his issuance of the I-Card for Plaintiff's arrest" is factually inaccurate.

### C. Qualified Immunity

The City Defendants' third objection – that Judge Pollak erred in concluding that the allegations in the PAC did not establish that all individual defendants were entitled to qualified immunity – lacks merit for much the same reason as the first objection. The question of whether the individual defendants had arguable probable cause – like the question of whether the individual defendants had probable cause – turns on what those defendants knew at the time of the arrest. As noted in subsection A, *ante*, it is unclear what information the individual defendants might have possessed that may have cast doubt on Chroscielewski's credibility and "what steps, if any, the officers took to investigate the veracity of her ... report" before making the probable cause determination. (Prior Order at 13.) Without knowing these details, the Court cannot determine whether the arresting officers had either probable cause or arguable probable cause.

## CONCLUSION

Because the City Defendants have not established that Magistrate Judge Pollak's memorandum and order granting Plaintiff's motion to amend was clearly erroneous or contrary to law, the Court rejects the City Defendants' objections to that memorandum and order. Plaintiff shall file the Proposed Amended Complaint (Doc. No. 35-2) as the Amended Complaint within 14 days of the date of this Memorandum and Order.

SO ORDERED.

Dated: Brooklyn, New York
January 14, 2020

s/Roslynn R. Mauskopf

_____
ROSLYNN R. MAUSKOPF
United States District Judge